UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOLLY H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 23-cv-10940

Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT (ECF NOS. 10, 14)**

---

## I.    Introduction

Plaintiff Molly H. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act.  Both parties have filed summary judgment motions and consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c).  ECF No. 8; ECF No. 10; ECF No. 14.  After review of the record, the Court **ORDERS** that:

- Plaintiff's motion (ECF No. 10) is **GRANTED**;

- the Commissioner's motion (ECF No. 14) is **DENIED**; and

- the ALJ's decision is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Plaintiff's Background and Disability Application

Born in July 1979, plaintiff was 40 years old when she applied for DIB in October 2020, with an alleged disability onset date of October 13, 2019. ECF No. 6-1, PageID.35, 50.  She had past relevant work as an employee trainer.  *Id.*, PageID.50.  Plaintiff claimed disability from a motor vehicle accident in 2012, traumatic brain injury, eye conditions, memory issues, shattered pelvis, broken sacrum, back conditions, swelling on her left side, arthritis, depression, and anxiety.  *Id.*, PageID.115.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  *Id.*, PageID.35, 51-52.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.20.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled.  At the first step, he found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 13, 2019.  ECF No. 6-1, PageID.38.  At the second step, he found that plaintiff had the severe impairments of degenerative disc disease of the sacrum with lumbar fracture, obesity, depressive disorder, post-traumatic stress disorder (PTSD), anxiety disorder, neurocognitive disorder, and status-post fractured pelvis.  *Id.*  Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.*, PageID.39-42.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of light work,[2] with the limitations below:

> Able to sit or stand alternating position for one or two minutes in the immediate vicinity of the workstation, no more frequently than every 30 minutes, while remaining on task for at least 90% of the work period.  Postural limitations of occasional climbing of ladders, ropes, or scaffolds.  Occasional climbing of ramps

---

[2] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday.  20 C.F.R. § 404.1567(b); Social Security Regulation 83-10.

and stairs.  Occasional stooping, kneeling, crouching, and crawling.  Occasional use of the bilateral lower extremities for operation of foot controls.  Manipulative limitations of frequent use of the bilateral upper extremities for handling, and fingering.  Environmental limitations to avoid more than occasional, concentrated exposure to moving mechanical parts and high exposed places.  Can understand, remember and carry out simple instructions, for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas.  Capable of using judgement to make simple work related decisions, with occasional changes in a routine work setting.  Occasional interaction with the general public.

*Id.*, PageID.42.  At step four, the ALJ found that plaintiff cannot perform past relevant work.  *Id.* at PageID.50.  After considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined at the final step that there were jobs in significant numbers that plaintiff could perform, including positions as a garment folder, hand packager, and mail clerk.  *Id.* at PageID.51.

## III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  The

substantial-evidence standard does not permit the Court to independently

weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d

917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

substitute its own judgment for that of the Commissioner merely because

substantial evidence exists in the record to support a different conclusion.");

*see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

1994) ("If the Secretary's decision is supported by substantial evidence, it

must be affirmed even if the reviewing court would decide the matter

differently, and even if substantial evidence also supports the opposite

conclusion.").

Plaintiff argues that the ALJ improperly evaluated two treating source opinions and her subjective symptom testimony.  ECF No. 10, PageID.1172-1185.  The Court agrees and remands the ALJ's decision.

**B.**

ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors.  20 C.F.R. § 404.1520c(b)(2).  "But the regulations only require ALJs to discuss the first two—supportability and consistency."  *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021).  Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be. § 404.1520c(c)(1).  An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive.  § 404.1520c(c)(2).

Plaintiff argues that the ALJ improperly evaluated opinions from primary care provider Tamra Starner, CNP, and from treating psychologist Richard Rizzo, Ph.D.  ECF No. 10, PageID.1173-1182.  She maintains that the ALJ's rationale for discounting those opinions was flawed and that he

ignored evidence supporting those opinions.  *Id.*  The Court considers the

ALJ's analysis of Starner's and Rizzo's opinions in turn.

**1.**

In January 2021, Starner completed a narrative letter stating that

plaintiff suffered a fractured pelvis, sacrum, and spine; bladder rupture; and

closed head injury from a car accident in October 2012.  ECF No. 6-1,

PageID.786.  Plaintiff still has chronic pain in her legs, hips, lower back,

and neck and severe weakness and neuropathy in her lower extremities.

*Id.*  She also has anxiety, PTSD, and a closed head injury causing impaired

judgment, decision-making skills, concentration, and short-term memory.

*Id.*  Starner wrote that plaintiff cannot lift more than five pounds and lacks

the functional capacity to return to work.  *Id.*  Plaintiff would have chronic

absences and would be off at least 30% of her scheduled time.  *Id.*

The ALJ found Starner's letter unpersuasive for several reasons.

First, he stated that a five-pound lifting restriction was "not supported by the

claimant's objective clinical findings, including normal to only slightly

reduced strength in her extremities" discussed in some medical records.

*Id.*, PageID.47.  That rationale is not supported by substantial evidence in

the record.  Plaintiff has chronic low back pain and arthritis, which are

exacerbated with exertion and lifting.  *Id.*, PageID.427, 433, 469, 472, 596-

8

598, 600, 610, 614-616, 618, 687, 697, 699, 1089.  Imaging studies

showed a mild L4-5 spondylolisthesis, loss of disc height at L5-S1,

moderately severe L4-5 facet arthropathy, and "tiny" disc protrusions in the

cervical and lumbar spine with an eccentric left disc protrusion at L4-5

compressing the nerve root.  *Id.*, PageID.526, 627.  Despite treatment with

narcotics, muscle relaxers, NSAIDs, physical therapy, massage therapy,

and a TENS unit, Starner repeatedly observed moderate to severe back

pain.  *See, e.g.*, *id.*, PageID.404, 435-436, 451, 458-459, 463-465, 471,

582, 598-599, 616-617, 621, 699, 1016.

Plaintiff also has mild carpal tunnel syndrome in her wrists, which

caused numbness and tingling in her hands.  *Id.*, PageID.663.  Plaintiff

often complained of numbness and tingling and reported difficulty holding

up her arms for too long.  *Id.*, PageID.427, 449, 457, 596, 600, 608, 627,

687.  Her doctor prescribed wrist splints and recommended carpal tunnel

release surgery if her condition did not improve.  *Id.*, PageID.663.  Although

plaintiff had normal strength and tone in her shoulders, Starner often noted

pain in the radius and redness and swelling in both hands.  *Id.*,

PageID.429, 435, 439, 443, 451, 459, 598, 602, 610, 616, 621.

True, some of the clinical findings suggest that plaintiff's conditions

were less severe.  During a neurosurgery consult with Jason A. Brodkey,

M.D., plaintiff was seated comfortably in a chair and could stand and walk. *Id.*, PageID.526. Dr. Brodkey believed that spinal surgery was unnecessary and recommended weight loss before any surgery. *Id.*, PageID.526-527. And during a neurological examination with Mark G. Loomus, M.D., plaintiff had a normal gait and could tandem and heel-toe walk. *Id.*, PageID.628. She had normal muscle bulk and tone, motor strength in all major muscle groups, coordination, fine motor movement, and reflexes. *Id.* Plaintiff had decreased pinprick sensation on the soles of her feet and only a slight decreased vibratory sensation in her ankles. *Id.*[4]

But these isolated findings from Drs. Brodkey and Loomus stand at odds with the bulk of the medical records discussed above. Arguments that an ALJ "cherry-picked" the record seldom succeed because they often dispute how the ALJ weighed the evidence. *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-334, 2021 WL 4077103, at *6 (W.D. Mich. Sept. 8, 2021). "Still, an ALJ may not 'cherry -pick' isolated medical records to reject a treating physician's opinion." *Id.* The ALJ's analysis here amounts to the latter circumstance. Although the ALJ discussed a few of Starner's objective findings, he did not consider how often she made the same

---

[4] Some of plaintiff's other doctors have noted that plaintiff has normal to only slightly decreased strength—but those findings relate to strength in her hips, not in her arms. ECF No. 6-1, PageID.402, 409, 581, 1015, 1019.

findings.  *See* ECF No. 6-1, PageID.44-45.  Nor did the ALJ explain why he

accorded more weight to Dr. Brodkey's and Dr. Loomus's objective findings

than to those of Starner and other providers.  *See Hardy v. Comm'r of Soc.*

*Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021) (ALJ failed to sufficiently

articulate her reasons for finding treating physicians' opinions unpersuasive

when she failed to "explain why she chose to accept the findings that

undercut the opinions and to reject the findings that supported them").

Second, the ALJ discounted Starner's opinion because she provided

no explanation supporting a high rate of absenteeism and off-task

behavior.[5]  *Id.*, PageID.47.  That rationale is inaccurate.  Starner explained

---

[5] When addressing claims filed before Marcy 27, 2017—that is, when the "treating physician rule" was in effect—this Court followed other opinions stating that an ALJ need not defer to a treating physician's opinion that a claimant is likely to be off task or miss work.  *See, e.g.*, *Yousif v. Berryhill*, No. CV 16-13470, 2017 WL 5493139, at *3 (E.D. Mich. Oct. 12, 2017) (collecting cases).  Courts called predictions that a plaintiff would likely miss work or be off task conjecture.  *Id.*  Now, ALJs no longer defer to treating physicians' medical opinions.  Rather, the ALJ must consider and articulate the persuasiveness of each opinion in the record.  20 C.F.R. § 404.1520(c).  And if an ALJ's articulated reasoning for finding a medical opinion unpersuasive includes an alleged lack of evidence that the claimant will be off task or miss work, the Court finds that it must determine whether those reasons are supported by substantial evidence.  The Court also finds that opinions that a claimant may be off task or miss work are not always conjecture.  *See Zudell v. Comm'r of Soc. Sec.*, No. 1:21-CV-01520-DCN, 2022 WL 4358108, at *7 (N.D. Ohio Aug. 3, 2022), *adopted*, 2022 WL 4356719 (N.D. Ohio Sept. 20, 2022) (addressing an opinion that the plaintiff would be off task or miss workdays because his medications caused sedation and difficultly concentrating).

that plaintiff's absences and off-task behavior were due to her injuries from the car accident, which still cause chronic pain, weakness, neuropathy, and cognitive impairments. *Id.*, PageID.786. On the same day that Starner completed her opinion, she examined plaintiff and noted that her attention, concentration, judgment, problem solving, and short-term memory were impaired and that her anxiety and depression were worsening. *Id.*, PageID.616. Starner also observed moderate to severe pain in the cervical, thoracic, and lumbar spine and latent nerve root pain that increased with activity and sustained postures. *Id.* Starner observed that plaintiff had normal strength and tone in her shoulders and knees but pain in the radius and redness and swelling in both hands. *Id.* Starner referred plaintiff to a neurosurgeon because she was not improving with rehab and had worsening balance with increased falls. *Id.*, PageID.617. These visit notes align with Starner's observations during other visits, as discussed above.

Last, the ALJ found unpersuasive Starner's opinion that plaintiff could not sustain competitive employment, as opinions about a claimant's ability to work are reserved to the Commissioner. *Id.*, PageID.47. That conclusion is correct. *See Nasser v. Comm'r of Soc. Sec.*, 598 F. Supp. 3d 614, 635 (E.D. Mich. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520b(c)(3); 20

C.F.R. § 404.1527(d)) ("[T]he determination of disability itself is an issue reserved to the Commissioner.").  But the ALJ still did not provide a valid rationale for rejecting Starner's other opinions in the January 2021 letter.

Starner also submitted a medical source statement in March 2021 that plaintiff is likely to be off task 25% or more of the workday and is incapable of even low stress jobs.  ECF No. 6-1, PageID.789.  Starner believed that plaintiff can walk two blocks, can sit and stand for one to two hours at a time and for less than two hours in a day, must shift positions or walk around at will, and must elevate her legs when sitting for prolonged periods.  *Id.*, PageID.789-790.  Plaintiff can occasionally lift and carry less than ten pounds, occasionally rotate her head, and perform no postural maneuvers (e.g., twisting or stooping), except for occasionally climbing stairs.  *Id.*, PageID.790-791.  Starner also stated that plaintiff has significant limitations with reaching, handling, and fingering because of her carpal tunnel.  *Id.*, PageID.791.  Plaintiff would require frequent unscheduled breaks and would be absent from work more than four days per month.  *Id.*, PageID.790-791.

The ALJ found Starner's medical source statement unpersuasive because the restriction for sitting and standing is facially inconsistent.  *Id.*, PageID.48.  Starner stated that plaintiff can sit and stand for one to two

hours at a time before needing to shift positions and that she can sit and stand for less than two hours in an eight-hour workday. *Id.*, PageID.789-790. There is nothing inconsistent between these restrictions, nor does the ALJ explain his view on why they conflict. Starner may have believed that plaintiff can sit and stand for 90 minutes at a time and that this is also the most sitting and standing that she can do in an eight-hour workday.

The ALJ also discounted Starner's opinion because plaintiff walked 12 blocks in April 2020, and the record did not reflect a significant deterioration in her condition since then. *Id.*, PageID.48. Although the ALJ correctly noted that plaintiff told her primary care physician that she went for a 12-block walk, she also said that her hips and knees ached the next morning. *Id.*, PageID.404. Nor does the record show that plaintiff was so active again. Plaintiff testified that she could walk a few blocks and stand for five to ten minutes on a good day, but that on a bad day she could only stand and walk for a minute. *Id.*, PageID.69. And several providers have noted that plaintiff has gait abnormalities. *Id.*, PageID.404, 407, 581, 1015, 1019. The ALJ again improperly credited one isolated instance of physical activity without reconciling it with the longitudinal data. *See White*, 2021 WL 4077103, at *6.

14

Next, the ALJ reasoned that the record did not support Starner's opinion that plaintiff had significant swelling requiring leg elevation or limited head and neck movement.  ECF No. 6-1, PageID.48.  Yet plaintiff sometimes reported joint swelling as a symptom of her osteoarthritis.  *Id.*, PageID.457, 460, 463, 697, 699, 732, 734, 793.  Although some records also showed that plaintiff had no leg swelling, it is unclear whether the ALJ considered the conflicting records.  *Id.*, PageID.402, 409, 525, 532, 781.  Likewise, plaintiff complained of neck pain that worsened when she turned her head, and Starner observed moderate to severe pain in plaintiff's cervical spine.  *Id.*, PageID.598, 600-602, 604-606, 608-610, 614-616, 618-621, 682.  Again, it is unclear whether the ALJ considered this evidence and how it influenced his reasoning.

"While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision.  Most importantly he must build an accurate and logical bridge from the evidence to his conclusion."  *Grandchamp v. Comm'r of Soc. Sec.*, No. 09-cv-10282, 2010 WL 1064144, at *10 (E.D. Mich. Jan. 25, 2010), *adopted*, 2010 WL 1064138 (E.D. Mich. Mar. 22, 2010) (cleaned up); *see also Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) ("An ALJ may not select and discuss only that evidence that favors his ultimate

conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." (cleaned up)).  The ALJ's logical bridge between the evidence and his conclusion is not apparent.

Finally, the ALJ found Starner's estimates of absenteeism and off-task behavior speculative because they conflicted with her estimates in the January 2021 letter.  ECF No. 6-1, PageID.48.  Starner's January 2021 letter estimated that plaintiff would be off task 30% of the workday.  *Id.*, PageID.786.  And Starner's March 2021 opinion stated that plaintiff would be off task 25% or more of the workday.  *Id.*, PageID.789.  The ALJ appears to have overlooked that the later opinion stated "25% *or more*," which is consistent with the 30% estimate in the earlier opinion.  And these opinions are not speculative and are supported by Starner's treatment notes, as discussed above.

Thus, the ALJ provided a flawed rationale for his findings that Starner's opinions were unpersuasive.

## 2.

The Court turns to Rizzo's February 2022 opinion, in which he diagnosed plaintiff with PTSD and depressive disorder because of traumatic brain injury.  *Id.*, PageID.1022.  Rizzo noted that plaintiff was

motivated in therapy but that her prognosis was guarded because of the

severity of her case.  *Id.*  Medication side effects included an inability to

focus or concentrate, poor attention, inability to think, lack of a "filter,"

fatigue, dizziness, lethargy, and sleep disturbance.  *Id.*  Rizzo found that

plaintiff had a very negative self-concept, fair insight and judgment, and an

impaired memory, and that she angered easily and could not handle stress

or conflict.  *Id.*  He concluded that plaintiff could not perform any vocational

activity on a sustained basis because of the severity of her psychological

limitations and physical pain.  *Id.*, PageID.1024.  Rizzo also found that

plaintiff would likely be off task 25% or more of the workday and would be

absent from work more than four days per month.  *Id.*, PageID.1023, 1025.

The ALJ found Rizzo's opinion unpersuasive.  *Id.*, PageID.48.  First,

he took issue with Rizzo's response to a question about additional reasons

why plaintiff would have trouble working on a sustained basis.  *Id.*  Rizzo

responded that plaintiff was in constant pain, could not sit or stand for any

length of time, was always fatigued, and must rest throughout the day.  *Id.*,

PageID.1025.  The ALJ faulted Rizzo for basing "his opinion in part upon

the claimant's physical limitations, which is outside the scope of his practice

as a psychologist," and where "[t]here is no indication that he would be

familiar with the claimant's physical conditions or symptoms other than by her own report."  *Id.*, PageID.48.

"It is well established that an ALJ can discount a psychologist's opinion about the claimant's physical functioning, because a psychologist is not qualified to diagnose a physical condition."  *Eves v. Comm'r of Soc. Sec.*, No. 1:14-cv-1241, 2016 WL 1165400, at *4 (W.D. Mich. Mar. 25, 2016) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001)).  But "[p]sychologists do not render opinions beyond the scope of their expertise when they merely opine as to the effects of pain on a claimant's mental health."  *Heins v. Saul*, No. 19-CV-2043, 2020 WL 6052583, at *13-14 (N.D. Iowa June 11, 2020), *adopted*, 2020 WL 4369450 (N.D. Iowa July 30, 2020) (collecting cases).

The ALJ was justified in rejecting Rizzo's assessment of plaintiff's ability to sit and stand.  But Rizzo was qualified to evaluate the impact that plaintiff's pain had on her mental health, especially when treatment records show that plaintiff's depression was linked to her pain and other physical ailments.  *See Bertram v. Colvin*, No. 5:14-CV-109, 2015 WL 4545770, at *14 (D. Vt. July 27, 2015); *see, e.g.*, ECF No. 6-1, PageID.369, 388, 394, 561, 1063.  And Rizzo's observation that plaintiff was fatigued and must rest during the day mirrors his observation that her medication causes

fatigue and lethargy.  ECF No. 6-1, PageID.1022, 1025.  The Commissioner cites no authority that it was inappropriate for Rizzo to consider the effect of medication side-effects on plaintiff's mental functioning.

Next, the ALJ found that Rizzo's opinion suggested that plaintiff was incapable of self-care or independent functioning, which conflicted with plaintiff's self-reported daily activities.  *Id.*, PageID.48.  But the ALJ mischaracterizes Rizzo's opinion.  Rizzo did not state that plaintiff could not perform basic activities like showering, tending to personal hygiene, or preparing simple meals.  *Id.*, PageID.1022-1025.  In fact, he stated that plaintiff "does keep herself clean and neat."  *Id.*, PageID.2025.  Instead, Rizzo stated that she had no useful ability to function in domains like "maintain[ing] attention for two-hour segments," "maintain[ing] regular attendance and be[ing] punctual within customary, usually strict tolerances," and "respond[ing] appropriately to changes in a routine work setting."  *Id.*, PageID.1024.  Those aptitudes differ from basic self-care and do not suggest an inability to function independently.

Nor does Rizzo's opinion conflict with plaintiff's daily activities.  Plaintiff stated that she can drive for 20 to 30 minutes depending on the day and, at most, can drive for about an hour.  *Id.*, PageID.67, 72.  Yet she

explained that she becomes tired while driving and sometimes has panic

attacks or forgets where she is. *Id.*, PageID.67. Plaintiff stated that she

can shower independently but uses a shower chair for balance; cooks

simple meals in the microwave or air fryer or in short increments; vacuums

while sitting in a rolling chair; and can perform most other household

chores except for laundry. *Id.*, PageID.73-74. In her function report,

plaintiff stated that she grocery shops for about 45 minutes but uses an

electric scooter and sometimes forgets what she is doing. *Id.*, PageID.300.

Plaintiff's only hobby is watching television, and she tries to limit her social

interactions with friends and family. *Id.*, PageID.301.[6] Although plaintiff

admitted that she returned to work after the car accident, she said that she

"faked [her] way through the job" because she was her own boss. *Id.*,

PageID.70, 268, 281, 302. And after plaintiff was "let go" from her job, she

said that she "did not realize how hard she was pushing herself" and

reported cognitive decline since then. *Id.*, PageID.409-410.

This case mirrors *Rogers v. Comm'r of Soc. Sec.*, in which the ALJ's

description of the claimant's "somewhat minimal daily functions" included

being "able to drive, clean her apartment, care for two dogs, do laundry,

---

[6] The ALJ noted that plaintiff is a "caregiver" for her husband, who requires "a lot of help." ECF No. 6-1, PageID.41 (citing *id.*, PageID.627). But the record does not indicate what kinds of tasks plaintiff performs in that role.

read, do stretching exercises, and watch the news." *See* 486 F.3d 234, 248 (6th Cir. 2007).  The Sixth Circuit noted that those tasks were not "comparable to typical work activities." *Id.*; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011) (finding that claimant's testimony that she could go to the grocery store and church, prepare meals, dress herself, and drive were "hardly consistent with eight hours' worth of typical work activities").  Likewise, plaintiff's daily functions including basic self-care and minimal household chores and cooking are not comparable to typical work activities.

The ALJ also found that Rizzo's findings of "marked" and "extreme" functional limitations conflicted with testing performed by William Medick, Ph.D., showing that plaintiff had only a moderate attention deficit.  ECF No. 6-1, PageID.48 (citing *id.*, PageID.809).  Initially, the Court notes that Rizzo did not rate plaintiff's functional limitations as "marked" or "extreme" as those terms are defined by the Commissioner and instead found that she was "unable to meet competitive standards" or had "no useful ability to function" in a regular work setting.  *Id.*, PageID.1024-1025.

Even if Rizzo's assessments equate to "marked" and "extreme" functional limitations, the ALJ's rationale remains flawed.  The ALJ's reasoning for finding Medick's opinion more persuasive than Rizzo's can be

gleaned from other parts of the decision.  The ALJ cited Dr. Loomus's neurological examination revealing a normal mood and affect, intact memory, normal attention and concentration, and normal speech and language.  *Id.*, PageID.46-47 (citing *id.*, PageID.628).  And the ALJ noted that plaintiff's rehabilitation specialist described her traumatic brain injury as mild and resolved.[7]  *Id.*, PageID.47 (citing *id.*, PageID.730).

Yet the record is replete with references to plaintiff's impaired attention and concentration.  Starner repeatedly observed that plaintiff's attention, concentration, judgment, problem solving, and short-term memory were impaired, with worsening anxiety and depression.  *Id.*, PageID.429, 435, 439, 443, 447-448, 451, 458, 461, 464, 467, 470-471, 598, 602, 606, 610, 616, 621, 786.  Plaintiff told Starner that she sometimes forgets where she is driving to and from and that she mixes her words and has trouble speaking.  *Id.*, PageID.433.  Another primary care provider noted that plaintiff's attention, concentration, and memory were impaired during conversation and that she was tearful with a depressed and anxious mood.  *Id.*, PageID.402, 409.

---

[7] The relevance of this statement is unclear, as this provider assessed plaintiff's physical functioning but not her attention or concentration.  ECF No. 6-1, PageID.809.

The ALJ acknowledged some of those observations but credited Medick and Dr. Loomus.  *Id.*, PageID.41, 48-49.  Again, Medick's and Dr. Loomus's findings conflict with the bulk of the medical records.  And as discussed, an ALJ may not "cherry-pick" isolated records when rejecting a treating source's opinion.  *White*, 2021 WL 4077103, at *6.  Here, the ALJ did not adequately explain why he credited two isolated records against the weight of the evidence.  *See Hardy*, 554 F. Supp. 3d at 907.  And although the ALJ reasoned that plaintiff drives, he failed to reconcile that fact with her claims that she often forgets where she is while driving.  *See* ECF No. 6-1, PageID.41, 67, 433.

Last, the ALJ found Rizzo's opinion that plaintiff could not work on a sustained basis unpersuasive, as opinions about a claimant's ability to work are reserved to the Commissioner.  *Id.*, PageID.49.  As noted above, the ALJ was correct.  *See Nasser*, 598 F. Supp. 3d at 635.  But the ALJ failed to provide a valid rationale for rejecting Rizzo's other opinions.

**3.**

Having concluded that the ALJ failed to adequately explain his rejection of Starner's and Rizzo's opinions, the Court must assess the impact on the case.  The Commissioner argues that any flawed opinion analysis amounts to harmless error because substantial evidence

23

nonetheless supports the RFC.  ECF No. 14, PageID.1198, 1206-1211

("Plaintiff's various contentions represent her disagreement with the ALJ's

evaluation of the medical treatment and opinion evidence, yet she fails to

show that any reasonable factfinder was compelled to assess greater

limitations than the ALJ already included in the RFC.").  But the caselaw

does not support that position.

The relevant regulations provide disability claimants with a

"procedural guarantee that an ALJ will explain—will 'articulate'—how

persuasive that officer found each medical source."  *Hardy*, 554 F. Supp.

3d at 905 (citing 20 C.F.R. § 404.1520c(b)).  In *Hardy*, the Commissioner

argued that substantial evidence supported the ALJ's nondisability finding,

notwithstanding the ALJ's flawed rationale for rejecting treating source

opinions.  *Id.* at 907-08.  The court rejected that argument because it

"ignore[d] the mandate of the regulations that guarantees claimants a

certain level of process that cannot be discounted by the substantial

evidence test alone."  *Id.* at 908.

> It is not the role of a reviewing court to comb the record and
> imagine manifold ways in which the factors could have been
> applied to the evidence that was presented.  The administrative
> adjudicator has the obligation in the first instance to show his or
> her work, i.e., to explain in detail *how the factors actually were
> applied* in each case, to each medical source.

*Id.* at 909.

Thus, the ALJ's failure to adequately explain his reasons for finding Starner's and Rizzo's opinions unpersuasive warrants remand.

## C.

Plaintiff asks the Court to reverse the ALJ's decision, award benefits, and remand solely for calculation of benefits.  ECF No. 1, PageID.1186.  Ordinarily, when an ALJ has committed reversible error, remand for further consideration is favored over an award of benefits unless there is no conflicting evidence about the severity of the claimant's impairments.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018); *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  And in *Miller v. Comm'r of Soc. Sec.,* the Sixth Circuit declined to remand for an award of benefits because "the record does not allow [the court] to conclude that the claimant is affirmatively entitled to an award of benefits, despite the prolonged nature of these proceedings."  811 F.3d 825, 840 (6th Cir. 2016).  Other courts have remanded for an award of benefits where the case had been previously remanded, the plaintiff was an advanced age, and remanding for further consideration of the record would have compounded the delay.  *Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1148-50 (E.D. Mich. 2001) (cleaned up); *see also Yoder v. Comm'r of Soc. Sec.*, No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16,

2011) ("This Court remands this case for an award of benefits because Plaintiff has endured considerable delay and proof of disability is strong and evidence to the contrary is lacking.").

Plaintiff filed her application in October 2020, and this is the first time the Court has remanded the case. When she applied, plaintiff was 40 years old—a "younger person" under the regulations. *See* 20 C.F.R. § 404.1563(c). And as discussed above, there is conflicting evidence about the severity of plaintiff's conditions. Thus, the Court cannot determine that plaintiff is entitled to benefits and must remand the case for further consideration of the medical opinions.

## IV. Conclusion

The Court **GRANTS** plaintiff's motion for summary judgment (ECF No. 10), **DENIES** the Commissioner's motion for summary judgment (ECF No. 14), and **REMANDS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated:

September 12, 2024

26

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 12, 2024.

s/Julie Owens<br>
JULIE OWENS<br>
Case Manager